UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LITTLE,
        Plaintiff,

vs.                                                                       Case No. 13-10311

BELLE TIRE DISTRIBUTORS, INC.                HON. AVERN COHN

        Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 15)
## AND DISMISSING CASE

### I. Introduction

This is a labor case. Plaintiff, Joseph Little (Little), is suing his employer, defendant Belle Tire Distributors, Inc. (Belle Tire), under the Fair Labor Standards Act, 29 U.S.C. 201, et seq. (FLSA) to recover unpaid overtime compensation. Little has worked as a First Assistant Manager at several tire stores owned by Belle Tire from 2009 to the present. As a First Assistant Manager, Little was paid a salary and did not receive additional compensation for working in excess of forty hours per week. Little claims that he worked approximately 1,234.70 hours of overtime in the last three years for which he has not been compensated. At issue is whether Little's employment as a First Assistant Manager satisfies certain exemptions under the FLSA, thereby making Little ineligible for overtime pay. Little says that his employment is covered by the FLSA because he is primarily engaged in sales and his managerial duties are secondary.

Before the Court is Belle Tire's motion for summary judgment on the grounds that

Little qualifies for the FLSA's "bona fide executive" exemption from overtime pay or, in the alternative, the FLSA's "administrative" exemption from overtime pay. For the reasons that follow, the motion will be granted.

## II. Background

The material facts as gleaned from the record follow:

In June 2006, Belle Tire hired Little as a tire technician at Store No. 52 in Flint, Michigan. As a tire technician, Little installed and repaired tires. He was initially paid $7.50 per hour and received a raise to $8.75 per hour in October 2006. In December, 2006, Little transferred to Store No. 57 in Waterford, Michigan, where he held a sales position and received hourly pay with commission.

In February 2009, Little was promoted to First Assistant Manager at the Waterford store. Following the promotion, Little's pay changed from an hourly rate to a salary of $1,000 paid semimonthly. In May 2011, he received a raise to $1,100 semimonthly. In addition, Little received monthly and year-end bonuses based on store performance as well as sales commissions. By the end of 2011, Little's annual compensation was $46,582, compared to an average annual compensation of $18,176 for tire technicians or $32,571 for Belle Tire sales persons.

Since 2009, Little has worked at several Belle Tire stores as a First Assistant Manager, including Store No. 84 in Battle Creek, Store No. 79 in Brighton, Store No. 17 in Novi, Store No. 18 in Waterford, and Store No. 6 in White Lake.

During his time working as a First Assistant Manager, Little continued to be responsible for selling Belle Tire products and services. However, the official job description for a "First Assistant Manager" states that First Assistant Managers are

"expected to have the necessary supervisory skills" and are "expected to have demonstrated managerial skills." As such, Little simultaneously performed various managerial duties, including but not limited to: disciplining employees; participating in job interviews of tire technician candidates; conducting training sessions for store employees; handling customer complaints; overseeing the stores "work order board;" preparing the weekly work schedule for store employees; deciding who to send home when work was slow; replenishing store inventory; purchasing supplies from third party vendors and issuing purchase orders that commit Belle Tire to pay those vendors; closing the store at the end of the day when the Store Manager was not present; and sending injured employees to the medical clinic for treatment. Additionally, Little developed and posted a spreadsheet that assigned workers to clean the bathrooms at the Waterford Store.

Further, Little, along with only the Store Manager and any other First Assistant Managers, has computer access to the time records of all employees. Little also has keys to the store in which he worked as well as a security alarm code.

Over the last three and a half years, Little worked 22% of all work hours with no Store Manager present, at which time Little was completely in charge of and responsible for the store. Ryan Scaglione, the Store Manager at Store No. 17 in Novi, states in his declaration that even when he was present in the store, Little assisted him with managerial tasks.

Belle Tire's training records show that Little was rated "Proficient" or "Master" as a First Assistant Manager in the following categories: Managerial Skills, Supervisory Skills, Scheduling, ISO (Belle Tire's Quality System), Response to Medical and other

Emergency Situations, Hiring and Termination Procedure, Sales and Profit Goals, Warranty Procedures, Store Controls, Inventory Management, Physical Inventories, Store Maintenance, Employee Maintenance Review, Tire Pressure Monitoring Systems, Record Keeping, and Computer.  Additionally, Little's performance reviews as First Assistant Manager in October, 2012, rated him a 5 out of 9 in the following categories: Planning & Organizing, Delegation, Decision Making, and Subordinate Development.

### III.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot  produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

### IV.  Analysis

#### A.  Parties' Arguments

Little argues that Belle Tire has not established either the executive exemption or the administrative exemption to the FLSA overtime requirements. In regards to the executive exemption, Little says that his primary duty was sales, *not* management, and that his involvement was merely peripheral and ordinarily under the store manager's supervision. Little says that the record does not show that he customarily and regularly directed the work of employees. Further, Little says that the record does not show that Little has authority to hire or fire other employees or that his suggestions and recommendations regarding any change in status of other employees are given particular weight.

As to the administrative exemption, Little says that Belle Tire has not demonstrated that Little's primary duty is the performance of work directly related to the management or general business operations of the employer, as opposed to production work. Additionally, Little says that none of the tasks Belle Tire portrays as "administrative" in nature carried any significant discretion or required independent judgment.

Belle Tire says that based on Little's deposition testimony as well as record evidence, Little falls under both the executive and administrative exemption from over time pay because his duties are in fact primarily managerial.

### B. Discussion

### 1. The FLSA's Bona Fide Executive Exemption from Overtime Applies to Little

The FLSA requires employers to pay overtime wages to non-exempt employees. 29 U.S.C. § 207(a)(1). An employee qualifies for the bona fide executive exemption from overtime if he satisfies the following requirements:

5

> (1) Compensated on a salary basis at a rate of not less than $455 per week...
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

There is no dispute as to the first requirement as Little makes more than $455 per week. However, Little argues that he does not satisfy the remaining elements based on his assertion that his primary duty was not management.

Whether an employee has "management" duties under the FLSA is based upon an evaluation of his actual job duties. Thomas v. Speedway SuperAmerica LLC, 506 F.3d 496, 503 (6th Cir. 2007). The FLSA provides the following guidelines for the type of activities that constitute "management":

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Belle Tire's job description of the First Assistant Manager position lists many of these duties and Belle Tire says that Little performed nearly all of these core management functions in his role as First Assistant Manager.  Indeed, the record shoes that Little interviewed candidates for tire technician jobs and recommended those candidates for selection to a Store Manager.  He conducted monthly "wheel off" training sessions and implemented his own training program for tire technicians.  He set and adjusted hours of work for store employees and decided which employees to send home when work was slow.  Little directed the work of employees through the work order board and mentored employees.  Little also maintained sales and purchasing records.  He disciplined employees for violating work rules.  He apportioned and monitored the work of the tire technicians and auto mechanics to ensure that it was done properly and on time.  Little monitored and replenished store inventory and issued numerous purchase orders for equipment and supplies.  He performed accounting functions, including collecting cash from other employees' drawers, preparing cash reconciliations and credit card reconciliations, and making bank deposits.  Little also handled customer complaints and refunds.  Finally, Little was responsible for ensuring that injured employees were treated at the medical clinic as well as for documenting any on the job injury.

Little says that while he did perform these management functions, they were not his primary duty.  The term primary duty means the "principal, main, major, or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  Little argues that he had only a peripheral role in these management functions and that 80-90% of his time was spent on sales.  Historically, courts have "tended to reject such post-hoc

efforts to minimize the relative importance of managerial duties." Jackson v. Advance Auto Parts, Inc., 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005). Federal courts have held that, under the FLSA's executive exemption, assistant managers of retail automotive part stores primary duty is management, despite the time commitment or other non-managerial duties.

This case is similar to Jackson, supra. In Jackson, the plaintiffs were assistant managers and had a salaried pay structure and responsibilities similar to Little here. Id. at 1326. Aside from sales, they were responsible for making decisions in the absence of the store manager, disciplining employees, preparing work schedules, etc. Id. at 1327-28, 1335. The district court rejected plaintiff's arguments that their primary duty was sales and not management and applied the FLSA's executive exemption, because the plaintiff's principal value to the employer was in their managerial work, which they performed simultaneously with their sales work. Id. at 1335. Even accepting Little's testimony that he did sales work 80-90% of the time, he admits that he performed this work while simultaneously performing his management tasks. Considering the similarities in responsibilities that Little has with the plaintiffs in Jackson, the same conclusion should be applied.

Moreover, courts consider the substance of the duties performed more so than the time spent performing them. See Jackson, 362 F. Supp. 2d at 1335. As noted in Thomas, supra, "[m]ore importantly, the time factor is less momentous, and might even be somewhat misleading, where the employee's management and non-management functions are not clearly severable." Thomas, 506 F.3d at 504, internal quotations omitted, citing Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982).

A similar holding is found in Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 865-67 (N.D. Tex. 2001). In Kastor, the district court held that the department manager's primary duty was management, despite the fact that the he contended that he spent 90% of his time performing the same work as hourly employees.

Additional evidence that management was Little's primary duty is the fact that he worked a substantial amount of time without a Store Manager present and, therefore, without supervision. Specifically, it is uncontested that from January 2010 to June 2013, Little worked 22% of all store hours without a Store Manager present. This freedom from supervision, even for only 22% of the time, is sufficient to demonstrate that management was his primary duty. See Brillas v. Bennet Auto Supply Inc., 675 F. Supp. 2d 1164 (S.D. Fla. 2009) (finding that the First Assistant Manager was exempt from overtime under the executive exemption where he worked 20-30% of his time unsupervised).

Here, it is undisputed that Little regularly closed and opened the store and spent entire weekends solely in charge of the store. Little argues that the fact that the store manager was available by phone detracts from his managerial duties. The Court disagrees. See Thomas, 506 F.3d at 508. ("Neither does a store manager's frequent, even daily, exchange of email and phone communications with her district manager compel a finding that the store manager is subject to 'exacting supervision'").

On a similar note, based on the declarations of Store Managers Joseph Prior and Scaglione, it is undisputed that Little routinely performed management duties while the store manager was present. This is further supported by the fact that Little's high performance reviews were based on the Store Managers' personal observations of Little

performing management tasks in their presence.

Little admits that he interviewed job candidates and made hiring recommendations, but in an attempt to downplay his management tasks, Little says that in his four and a half years as First Assistant Manager, he only participated in interviews once or twice at Store 17.  However, Little did not deny participating in other, additional interviews, both at Store 17 and in other stores where he worked as First Assistant Manager.  He stated that he could not recall specific candidates, but that it is "very possible" that he interviewed them.  Store Managers Scaglione and Prior further support the claim that Little participated in multiple interviews at each store.  More importantly, they both state that they followed Little's hiring recommendations following the interviews.

Further evidence of Little's managerial duties is that he admits to training employees.  Despite his testimony that he only "once or twice" conducted monthly wheel-off training, he does not deny conducting additional training.  The additional training included: (1) group training sessions for tire technicians and Store 18 and (2) instituting his own training session and his own training document at Store 17 to address problems he observed there.

Additionally, Little admits to running the "work board," but claims that all employees have the authority to do so as well.  However, Little does not deny that aside from running the work board he monitored the work performed in the auto shop and regularly directed the employees performing that work.  However the record shows that Little supervised shop employees and monitored their work every 15 minutes, even when a Store Manager was present.  Little's similar attempts to downplay his

responsibilities for disciplining, scheduling, and purchasing fall short due to uncontroverted business records proving that he regularly performed such actions.

Finally, the fact that Little's salaried compensation was significantly higher than his subordinates' hourly pay, as well as the fact that he received bonuses, also shows that Little's primary duty was management.

Based on the above, Belle Tire has provided sufficient evidence to demonstrate that Little's duty was primarily management and that the store cannot operate without Little's managerial tasks. Little has failed to show that there is a genuine issue of material fact on this issue. Little's is therefore exempt from overtime pay under the bona fide executive exemption from the FLSA.

### 2. The FLSA's Administrative Exemption from Overtime Applies to Little

Belle Tire alternatively argues that the FLSA's administrative exemption prevents Little from being entitled to overtime pay. This exemption applies when an employee satisfies the following conditions:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . (2) Whose primary duty is management of the enterprise in which the employee is employed. . . ; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

Little satisfies all of these elements. Again, there is no dispute that Little satisfies the compensation requirement, as he is paid a base, monthly salary of $550 per week. However, Little argues that because he testified that he spends 80-90% of his time on sales duties, his primary job cannot be administrative. On the contrary, his argument

11

ignores that fact that while performing his sales duties, Little <u>simultaneously</u> performed a broad spectrum of non-manual work directly related to Belle Tire's general operations.

Moreover, Little's reliance on <u>Foster v. Nationwide Mut. Ins. Co.</u>, 710 F.3d 640 (6th Cir. 2013) is misplaced.  In <u>Foster</u>, the Sixth Circuit explained what is referred to as the "administrative-production dichotomy" under the FLSA.  This is the situation in which production employees (whose job it is to generate the product or service the business offers to the public) will not qualify for the exemption. . . ." <u>Id</u>. at 644 (citations and internal quotes omitted).  In other words, "[u]nder the administrative/production dichotomy analysis, th job of 'production' employees 'is to generate (i.e. 'produce') the very product or service that the employer's business offers to the public." <u>Renfro v. Indiana Mich. Power Co.</u>, 370 F.3d 512, 517 (6th Cir. 2004).  Belle Tire is not arguing that Little qualifies for the administrative exemption based only on his sales duties; rather Belle Tire says it is the multiple additional tasks–which are directly related to Belle Tire's business operations–that he performs at the same time.  Specifically,  Little's non-sales work included, but was not limited to:

- Uses Belle Tire's on-line Medallia computer system to track customer satisfaction and resolve any customer problems.

- Adjusts the time records of store employees to ensure accurate payroll.

- Adjusts work order records to ensure that store mechanics are paid commissions correctly and can be held accountable for any work defects.

- Replenishes store inventory and establishes extra stock levels.

- Issues purchase orders that commit Belle Tire to pay third-party vendors for products necessary for the store to operate.

- Prepares cash reconciliation forms, collects the store's cash from employees assigned a cash drawer, and balances credit card payments and the Goodyear

payment system.

The court in Brillas, supra, held that the plaintiff's work as a first assistant manager at defendant's retail auto parts store directly related to the store's management and general business operations under the FLSA because he drafted reports that tracked defects, inventory, and the cash register. Brillas, 675 F. Supp. 2d at 1170. Like the plaintiff in Brillas, Little is responsible for creating records of Belle Tire's customer complaints, inventory, purchase orders, and work orders, etc. The court in Brillas further held that the plaintiff's work at the sales counter was directly related to the store's general business operations and thus satisfied the administrative exception. Id. at 1171. ("The sale of these parts to the customer is the most important part of Bennett Auto's business."). The same conclusion applies to this case. Even though Little spends time doing sales duties, his work is still clearly and directly related to Belle Tire's management and general business operations.

In addition, Little exercised his authority to purchase, without a dollar limit, any special order tires on Belle Tire's behalf when required to satisfy a customer. Further, Little balanced necessity and convenience in determining what to pay for certain supplies that he ordered for the store.

Finally, the record shows that Little exercised discretion and independent judgment on significant matters, including the hiring and firing of employees as well as employee training. Little was vested with and exercised significant discretion when he resolved customer complaints, both in person and via the Medallia computer system, by negotiating a price adjustment with the customer to ensure their satisfaction, which is of

critical importance to Belle Tire. Even Little admits to regularly using his own discretion in determining what product or service to sell to the customer in the first place.

For the reasons stated above, Belle Tire has shown that Little exercised his discretion and independent judgment on matters of importance to it. Little has failed to establish a genuine issue of material fact otherwise. Little, therefore, is exempt from overtime under the FLSA's administrative exemption.

### V.  Conclusion

Under the terms of the FLSA, its regulations, and applicable case law, Little is exempt from overtime pay as a salaried First Assistant Manager. While Little has attempted to minimize his managerial duties his duties at Belle Tire, the record shows otherwise. Belle Tire has met its burden of establishing that there are no genuine issues of material fact as to whether Little is exempt from overtime under either the bona fide executive or the administrative exemptions. Belle Tire's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

                                      s/Avern Cohn
                                      UNITED STATES DISTRICT JUDGE

Dated:  December 5, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 5, 2013, by electronic and/or ordinary mail.

                                      s/Carol Bethel for Sakne Chami
                                      Case Manager, (313) 234-5160