UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LITTLE,

    Plaintiff,

-vs-

Case No. 13-10311

Hon. AVERN COHN

BELLE TIRE DISTRIBUTORS, INC.,

    Defendant.
_____/

## DECISION

### I. Introduction

This is a wage hour case implicating the executive exemption of the Fair Labor Standards Act, 29 USC §213(a) ("The provision[.] . .shall not apply with respect to (1) any employee employed in a *bona fide* executive. . .capacity. . .") tried to the Court over three (3) days in May, 2015. The background of the case is reflected in the decision granting summary judgment to defendant, a retail tire distributor in southeast Michigan, *Little v. Belle Tire Distributors, Inc.*, 2013 WL 6328849 (E.D. Mich. 2013), and reversed on appeal, 588 F. Appx. 424 (6th Cir. 2014). In reversing the dismissal, the Court of Appeals said:

> Though it is clear Little played some role in interviewing job candidates, preparing work schedules, and conducting training, questions remain concerning the exact nature of the work Little performed and the level of discretion that Little exercised. Such questions are suitable for a factfinder's determination.

588 F. Appx. at 426.

The decision dismissing the case adequately describes in general plaintiff's work history as a First Assistant Store Manager with defendant, as well as the nature of defendant's business, and will not be repeated here.

Based on the record at trial, the Court is satisfied that defendant has proven by "clear and affirmative evidence" that plaintiff falls within the executive exemption. *Id.* at 426. Plaintiff's primary duties as a First Assistant Store Manager while in the employ of defendant is in a management position under the statute.

As the Court said in granting defendant summary judgment, and now repeats here, "[defendant] has shown that [plaintiff] exercised [during his workday] his discretion and independent judgment on matters of importance to it." 2013 WL 6328849 at 8.

## II. The Law

The case law interpreting the executive exemption in the Act was fully discussed in the decision granting summary judgment and its reversal and will not be repeated here. What is important to the decision here and bears repeating are the Department of Labor regulations relating to the executive exemption. The relevant regulations are attached as Exhibit A.

## III. The Trial[1]

### A. The Witnesses

Five witnesses testified.

- **Joseph Little**   Little described his work history with defendant, beginning as a tire technician and his promotion to First Assistant Store

---

[1] The trial was limited to liability. There is a Stipulation Regarding Damages in place (Doc. 46).

2

Manager. He described in detail his daily activities in several of defendant's retail stores over his nine (9) years of employment. He participated in hiring, discipline, training, oversight of the tire technicians' work, including apportioning the work, scheduling work hours, adjusting time records, operating the Medalia system (a website that handles customer satisfaction surveys), responding to customer complaints, adjusting prices for goods sold, issuing purchase orders to vendors for miscellaneous store items, and being in charge of the store when the manager was not present. His testimony that 80% of his workday was sales and 20% was management was not supported by any other testimony.

- **Joseph Prior** Prior was a seven (7) year employee of defendant. He was initially a First Assistant Store Manager, and then for four (4) years a Store Manager. He was personally acquainted with plaintiff's workday as a First Assistant Store Manager. Plaintiff worked as a First Assistant Store Manager under him for one (1) year. Prior described the workday of a First Assistant Store Manager, and also the workday of a Store Manager.

- **Ryan Scaglione** Scaglione was an eight (8) year employee of defendant. He is now a Regional Director of Retail Operations. He had ten (10) years experience as a Store Manager. He was personally acquainted with plaintiff's work as a First Assistant Store Manager; plaintiff

worked as a First Assistant Store Manager under him for two (2) years. He described the workday of a First Assistant Store Manager.

- **David LaBounty**    LaBounty was a 20 year employee of defendant. He is now a Regional Director of Retail Operations. Plaintiff worked under him as a First Assistant Store Manager for one (1) year. His testimony was cumulative of Scaglione.

- **James Tyson**    Tyson is a consultant to defendant. He was formerly chief financial officer and general counsel of defendant, and then chief operating officer between 2009 and 2014. He had daily contact with Store Managers and First Assistant Store Managers. He testified as follows:
    - First Assistant Store Managers had the right to hire and fire store employees on their own.
    - He had analyzed the position of First Assistant Store Manager, and had concluded that the position fell under the executive exemption since the primary duty of the position was management. He came to this conclusion from his observations while in the stores, the job description for First Assistant Store Manager, and his personal interactions with employees.
    - First Assistant Store Managers had their own training meetings.
    
    Tyson was a credible witness; cross-examination did not diminish the credibility of his answers. For the most part, cross-examination was directed to his testimony on training meetings.

B.  The Exhibits

A multitude of exhibits were introduced into evidence at trial and post-trial.  They included plaintiff's job application, e-mails, job descriptions, discipline cards, training records, purchase orders and summaries of training meetings.  Some of the exhibits were particular to plaintiff, and others generic to the operation of a store.  Particularly pertinent exhibits and what they say of plaintiff's management duties follow.  These exhibits flesh out, in the words of the Court of Appeals, "the exact nature of the work Little performed."  *Little*, 588 F. Appx. At 426.

- **Exhibit 6**   Job description of First Assistant Store Manager.  The exhibit describes plaintiff's duties.  Plaintiff testified (Tr., Vol. 1, p. 62) as to this exhibit as follows

    Q.   Let's take a look at Exhibit Number 6. . .this is a job description of your job as first assistant; is that correct?

    A.   Yes.

    * * *

    Q.   Do you disagree with any of the description items in that description?

    * * *

    A.   I don't see anything that I would disagree with other than possibly the fully knowledgeable part of 4 regarding hiring and termination procedures.  Other than that, pretty accurate, yes.

- **Exhibit 7**   Job description of Store Manager.

- **Exhibit 8**    Plaintiff's Employee Training Record dated October 17, 2012.  This exhibit establishes that plaintiff was deemed Proficient or Master in a multitude of managerial tasks.

- **Exhibit 9**    Plaintiff's Performance Appraisal dated October 17, 2012.  This exhibit establishes that plaintiff performed "Expected" or "More Than Expected" in performing his responsibilities, and particularly "Expected" in Planning & Organizing, Delegation, Decision Making and Subordinate Development, all managerial tasks.

- **Exhibit 10**    Employee Corrective Action Record dated August 09, 2012.  This exhibit is an example of plaintiff disciplining a tire technician for deficient performance.

- **Exhibit 13**    Medallia, Inc. records.  This exhibit is a multi-page listing of customer complaints plaintiff responded to over the years he was a First Assistant Store Manager.

- **Exhibit 16**    The work order board.  Plaintiff had the responsibility of seeing that the tire technicians took down work orders in the sequence posted.

- **Exhibit 17**    Total Annual Compensation Comparison.  This exhibit displays plaintiff's compensation annually for the years 2011 to 2014, compared to Second Assistant Store Managers, Third Assistant Store Managers and Sales Associates, all inferior positions to the First Assistant

Store Manager, and all of whom were paid hourly. On average, plaintiff's compensation was ten percent (10%) to twenty percent (20%) higher.

- **Exhibit 17A**   Total Annual Compensation Comparison. This exhibit is a detailed comparison of plaintiff's annual compensation for 2011 to 2014, compared to Store Managers, Second and Third Assistant Store Managers and Sales Associates. It shows that plaintiff was paid less than Store Managers and more than Second and Third Assistant Store Managers and Sales Associates.

- **Exhibit 18**   A graphic which displays in percentages the amount of time between January 01, 2010, and May 12, 2015, plaintiff was in a store with the Store Manager present, present in a store by himself without a Store Manager present, and present in a store without a Store Manager present, but with another First Assistant Store Manager present.

- **Exhibit 34**   Schematic of personnel of Belle Tire Store 63, White Lake, Michigan. This exhibit displays the employees working in a store on a typical day. (A copy is attached as Exhibit B.)

IV.  Findings of Fact[2]

What follows are the essential facts as required by Fed.R.Civ.P. 52. These findings are based on an assessment of the credibility of the witnesses, weighing the testimony and exhibits, and drawing such inferences as is appropriate.

---

[2]  The findings include the descriptions of the testimony of the witnesses and the exhibits, *supra.*

Plaintiff, because of his self-interest, as well as incidents during his years with defendant was not a particularly credible witness.  Plaintiff downplayed his workday as a manager, and exaggerated his workday as a salesperson.

1.	Defendant operates 86 retail stores; 65% have a single First Assistant Store Manager, while 35% have more than one (1) First Assistant Store Managers.

2.	Plaintiff began working for defendant in June, 2006, as a tire technician.  Six (6) months after being hired, plaintiff transferred to sales.  Both jobs called for hourly pay.  In February, 2009, plaintiff was promoted to First Assistant Store Manager, a salaried position.  Plaintiff continues to work for defendant.

3.	Plaintiff, in addition to a regular annual salary, receives a bonus at year's end.  Store Managers and First Assistant Store Managers receive a bonus based on store performance.

4.	In the aggregate during a workday, plaintiff works both as a manager and as a sales person.  His sales work is less than 50% of his workday.

5.	Plaintiff monitors the work performance in the shop, and regularly directs the tire technicians.

6.	When bringing tire technicians together to address specific problems, plaintiff is correcting behavior and training the tire technicians.

7.	Plaintiff exercises supervisory responsibility over the tire technicians in the shop of the store in which he works.  Plaintiff has the responsibility of placing work orders generated by the sales persons in the store on a board in the sequence in which they are written up.  The work order describes to the tire technician the work to be done

on an automobile brought to the store by a customer.  The work particularly relates to tires, both new and to be repaired, oil changes, brake adjustments and the like.

8. The order board effectively directs the traffic in the shop.  Plaintiff monitors the tire technicians' work.  Plaintiff reassigns work when necessary and resolves disputes among the tire technicians.

9. Plaintiff has the responsibility for ensuring there is an adequate number of tire technicians to do the work of the day.  This includes sending the tire technicians home when work slackens off.  Plaintiff advises tire technicians when they run into problems.  On occasion, plaintiff has to resolve disputes among the tire technicians.

10. Plaintiff's responsibility for the work of the tire technicians requires supervisory skill and judgment.

11. Plaintiff regularly participates in the hiring process in a store.  On occasion plaintiff interviews job applicants and makes recommendations as to who to hire.  The Store Manager gives consideration to plaintiff's recommendations.  The record contains specific examples of plaintiff exercising judgment during the hiring process.

12. Plaintiff regularly trains sales staff on computer systems, point of sale systems, national account systems and writing work orders.

13. Plaintiff's level of sales activity is substantially less than his management responsibilities.  Plaintiff is regularly in charge of a store where a Store Manager is not on the premises.  As to the days when a Store Manager is in the store, plaintiff and the Store Manager work opposite ends of the workday.  Plaintiff has the responsibility for opening the store, while the Store Manager has the responsibility for closing the store.

14. When more than one (1) Assistant Store Manager is present without a Store Manager present, the Assistant Store Managers share responsibilities.

15. Plaintiff has worked 18% of his hours without a Store Manager present, and without another First Assistant Store Manager present. Plaintiff has worked 9% of his hours without a Store Manager present and with another First Assistant Store Manager present. This totals 27% of all work hours without a Store Manager present.

16. First Assistant Store Managers have met separately on several occasions in recent years for training purposes.

17. The responsibilities of a Store Manager, including hiring, training, employee maintenance and inventory management as described in the job description for Store Manager (Exhibit 7) are incorporated into Sec. 4.5 and 4.6 of Exhibit 6, the job description for First Assistant Store Manager.

V.  Discussion

A.

The FLSA's administrative exemption states that plaintiff is exempt from overtime pay. 29 C.F.R. §541.100(a) defines an exempt employee as follows:

> (1) Compensated on a salary basis at a rate of not less than $455 per week. . .(2) Whose primary duty is management of the enterprise in which the employee is employed. . .(3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Plaintiff satisfies these elements. Plaintiff is paid a base salary of $550.00 per week.

10

Plaintiff's primary duties are management of a store.

There is no dispute that plaintiff performs sales duties as part of his workday. While plaintiff says that these duties occupy 80% of his time, there is no support in the record other than plaintiff's testimony for the 80% figure. On the contrary, given the variety of his management tasks on a workday and the significant amount of time plaintiff was in charge of the store while the Store Manager was absent, plaintiff's workday is principally managerial.

The Court discusses the "administrative production dichotomy" in its summary judgment decision, and will not repeat it here. *See,* 2013 WL 6328849 at 7.

Plaintiff customarily and regularly directs the work of two (2) or more other employees; he is in charge of the tire technicians.

Finally, plaintiff's suggestions as to hiring and firing other employees are seriously considered by the Store Manager, and the record supports a finding that plaintiff sometimes exercises that function directly.

B.

Some discussion of plaintiff's workday in addition to what was said above is in order.

1.

As to the division between hours plaintiff works in a managerial capacity and hours he works in sales, there was no direct testimony at trial except plaintiff's unsupported testimony of a 20% to 80% split. However, there was documentary evidence in the form of two (2) pie charts, Exhibit 18, previously described.

- Plaintiff worked 18% of all hours without a Store Manager present and without another First Assistant Store Manager present

- Plaintiff worked 9% of all hours without a Store Manager present and with another First Assistant Store Manager present

- Thus, plaintiff worked 27% of all hours without a Store Manager present

Also, when plaintiff works together with another First Assistant Store Manager present, both are equally responsible for running the store.  There is no seniority between the two (2) so far as responsibilities were concerned.

2.

The Store Managers who testified as to the amount of time spent on sales activities opined that each sold as many tires and services as plaintiff, and in the case of Prior, more than plaintiff.  This disparity was not explained.  The Store Manager further explained that they and plaintiff spend between 20% and 30% of their time selling.

The Court is satisfied that the proofs at trial show that plaintiff spends at a minimum less than 50% of his workday selling and more than 50% of his workday in managerial duties.

C.

When exempt and non-exempt duties overlap, the importance of the time factor diminishes, and may in the words of the Sixth Circuit "be somewhat misleading," *Thomas v. Speedway Superamerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007); *see also*, *Jackson v. Advance Auto Parts, Inc.*, 362 F.Supp.2d 1323, 1335 (N.D. Ga. 2005).  In

this case, the executive exemption was applied to the assistant manager of an auto parts store who performed sales and management duties "simultaneously."

D.

What plaintiff does as a First Assistant Store Manager is what is important to Belle Tire. As explained in Defendant's Post-Trial Brief (Doc. 49, p. 12):

> The Belle Tire store would not have operated effectively (if at all) without Little's management duties. Little ensured adequate staffing levels in the shop. He then directed work in the shop to ensure that jobs were completed correctly and on time. He also ran the entire store, supervised its employees, and handled any and all issues that arose for substantial periods of time. This was of major importance to Belle Tire. (Citations omitted)

VI. Conclusion

In the first round of the case, the Court found effectively that there were no genuine issues over the facts to support the conclusion that plaintiff is exempt from the overtime provisions of the FLSA because he is part of management. That conclusion was held to be in error, because the affidavits in support were insufficient in the view of the Court of Appeals to support this conclusion.

The second round of the case consisted of testimonial and documentary evidence. The evidence and the inferences reasonable to be drawn from it supports

the conclusion that plaintiff is a manager and is exempt from the overtime provision of the FLSA.

Accordingly, this case is DISMISSED.

SO ORDERED.


Dated: October 20, 2015          s/Avern Cohn
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


S:\WestKM\OPINIONS\October 2015\13-10311.Little v. Belle Tire.Dismiss.wpd